IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| MARTIN MACK, *Plaintiff*, v. OLD DOMINION FREIGHT LINE, INC., and HARRY POOLE, *Defendants*. | CIVIL ACTION NO. 5:21-cv-00118-TES |

ORDER GRANTING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT

This case comes to the Court because two tractor-trailers collided on September 28, 2020. [Doc. 1, ¶ 13]. At the time of the collision, Plaintiff Martin Mack drove a tractor-trailer for his statutory employer, non-party FP Enterprises, Inc. ("FP"), and Defendant Harry Poole, who worked for Defendant Old Dominion Freight Line, Inc. ("ODFL"), drove the other. [Doc. 35-1, ¶¶ 1–3]. Both drivers were acting in the course and scope of their respective employers. [*Id.* at ¶¶ 2–3].

Citing O.C.G.A. § 51-12-33, ODFL filed a Notice of Intent to Attribute Fault to Non-Party and Request for Apportionment [Doc. 32] based on its contention that "[t]he brakes on the commercial motor vehicle that [Plaintiff] was driving at the time of the accident were not in compliance with the Federal Motor Carrier Safety Regulations." [Doc. 32, ¶ 3]. Plaintiff has moved for partial summary judgment as to ODFL's intent to

attribute fault and apportion some of Plaintiff's related damages to FP. [Doc. 35]. As explained below, ODFL's efforts to limit its potential exposure cannot carry the day when the Court considers the evidence *presently on the record* against the legal standard applicable at summary judgment.

To begin, Georgia's apportionment statute "is designed to apportion damages among 'all persons or entities who contributed to the alleged injury or damages'—even persons who are not and could not be made parties to the lawsuit." *Martin v. Six Flags Over Ga. II, L.P.*, 801 S.E.2d 24, 36 (Ga. 2017) (quoting *Couch v. Red Roof Inns, Inc.*, 729 S.E.2d 378, 381 (Ga. 2012)). Further, it is a defendant's—or ODFL's burden to establish a rational basis for apportioning fault to FP. *Johnson St. Props., LLC v. Clure*, 805 S.E.2d 60, 68 (Ga. 2017) (citation omitted); *see also Pneumo Abex, LLC v. Long*, 849 S.E.2d 746, 751–52 (Ga. Ct. App. 2020). In other words, FP "can only be included on the verdict form for purposes of apportionment if there is some competent evidence that [it was], in fact, [negligent] and it proximately caused or contributed to causing [Plaintiff's] injuries and damages." *Pneumo Abex*, 849 S.E.2d at 752.

The nature of O.C.G.A. § 51-12-33 clearly provides that a *jury* should be able to consider the "fault" of some other person or entity not named in the lawsuit. *Clure*, 805 S.E.2d at 68. It is true that some Georgia cases instruct that defendants can rely on evidence presented at trial when assessing whether the burden to apportion fault has been met. *See Alston & Bird LLP v. Hatcher Mgmt. Holdings, LLC*, 785 S.E.2d 541, 544 n.5

2

(Ga. Ct. App. 2016) (emphasis added); *Double View Ventures, LLC v. Polite*, 757 S.E.2d 172, 178 (Ga. Ct. App. 2014), *overruled on other grounds by Martin*, 801 S.E.2d at 38 n.12. But, ODFL's efforts to attribute fault to FP operates just like any other claim, and save for Plaintiff's motion for partial summary judgment, there would've been no question that if ODFL had presented evidence of a rational basis for FP's fault, then the jury could have decided how much, if any, of the blame for Plaintiff's damages would be attributed to FP. However, as with any dispositive motion filed after the completion of discovery, Plaintiff's motion for partial summary judgment forces an examination of the present record. And, consistent with other summary-judgment motions, if successful, Plaintiff can thwart ODFL's efforts to present and rely on evidence at trial when it comes to the issue of attributing fault and apportioning damages to non-party, FP. *See H & L Farms LLC v. Silicon Ranch Corp.*, No. 4:21-CV-134 (CDL), 2023 WL 221508, at *3 (M.D. Ga. Jan. 17, 2023).

    A.    <u>**Legal Standard**</u>

With that in mind, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437

(11th Cir. 1991)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion. *Four Parcels*, 941 F.2d at 1437 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may cite to particular parts of materials in the record, including, "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.*; Fed. R. Civ. P. 56(c)(1)(A).

Importantly, "[w]hen the nonmoving party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material negating the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 323). Rather, "the moving party simply may show—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 324) (cleaned up).

If this initial burden is satisfied, the burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or[] is not significantly probative' of a disputed fact." *Josendis*, 662 F.3d at 1315 (quoting *Anderson*,

4

477 U.S. at 249–50). "A mere scintilla of evidence supporting the [nonmoving] party's position will not suffice." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Finally, "[t]he evidence of the [nonmovant] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. And "if a reasonable jury could make more than one inference from the facts, and one of those permissible inferences creates a genuine issue of material fact, a court cannot grant summary judgment." *Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020).

**B.     Plaintiff's Partial Motion for Summary Judgment**

Before going any further, it must be remembered that although ODFL is a defendant in this lawsuit and is the nonmoving party in the motion before the Court, it nevertheless bears the burden of proof when it comes to apportionment. Again, as the party seeking to attribute fault and apportion damages, ODFL bears the burden of establishing a rational basis for doing so by satisfying the elements of negligence as they relate to FP's conduct. *Clure*, 805 S.E.2d at 68; *Pneumo Abex*, 849 S.E.2d at 751–52; *Wolfe v. Carter*, 726 S.E.2d 122, 125 (Ga. Ct. App. 2012) (noting that the burden of proof goes to "each element" of a negligence claim) (citations omitted). Thus, ODFL must "introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of [FP] was a cause in fact" of Plaintiff's injuries. *Wolfe*, 726 S.E.2d at 125. "A mere possibility of such causation is not enough[,] and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly

5

balanced, it becomes the duty of the court to grant summary judgment for the [movant]." *Id.*; *see also* [Doc. 35-2, p. 5 (citing *McQuiag v. Tarrant*, 603 S.E.2d 751, 753 (Ga. Ct. App. 2004))].

Here, ODFL seeks to attribute fault to FP on two bases. First, ODFL notes that the brakes on Plaintiff's tractor-trailer were defective, and second, it points out that Plaintiff was exceeding the speed limit moments before the accident happened. [Doc. 32, ¶¶ 3–4]; [Doc. 35-2, p. 5]. Plaintiff, however, argues that he is entitled to summary judgment as to ODFL's attempt to attribute fault to FP "because there is no evidence that any act or omission" by FP "was a proximate cause of [his] injuries[.]" [Doc. 35-2, pp. 1, 5].

Relying on the Federal Motor Carrier Safety Regulations, ODFL argues that FP had the obligation to ensure that its equipment is properly maintained and in good working order. [Doc. 32, ¶ 2]; [Doc. 54, p. 4]. Generally, "[e]very motor carrier and intermodal equipment provider must systematically inspect, repair, and maintain, or cause to be systematically inspected, repaired, and maintained, all motor vehicles and intermodal equipment subject to its control." [Doc. 54, p. 4, (quoting 49 C.F.R. § 396.3)]. Moreover, "[p]arts and accessories shall be in safe and proper operating condition at all times, and "[a] motor vehicle shall not be operated in such a condition as to likely cause an accident . . . ." [Doc. 54, p. 4 (quoting 49 C.F.R. §§ 396.3, 396.7)].

In its Response [Doc. 54], ODFL contends that "[i]nspection of [Plaintiff's] [tractor-trailer] after the accident by Plaintiff's reconstruction expert, Sean Alexander,

found that [its] . . . brakes were deficient because of a bent L5 pushrod and an air leak." [Doc. 54, p. 1]. *If* the bent pushrod existed at the time of the collision, Mr. Alexander testified that it would have affected the tractor-trailer's braking capacity, but to what extent remains unknown. [Doc. 68, Alexander Depo., pp. 37:2–4 ("If you've got an air leak at that chamber upon the braking then you're going to have a diminished braking.")]. "It may have been there previous[ly][,]" Mr. Alexander testified, but "[t]here's no way for [him] to know." [*Id.* at pp. 37:7–9; 39:4,13–14]. By that same token, however, Mr. Alexander also testified that he did "not see any impact to that area that may have caused" the bent pushrod. [*Id.* at p. 35:2–5].

Based on Mr. Alexander's testimony, Plaintiff admits that "the bent pushrod and air leak would have affected braking efficiency to some degree[]"—an obvious and permissible concession in ODFL's favor as the nonmoving party at summary judgment. [Doc. 96, pp. 2, 5]; *see also Anderson*, 477 U.S. at 255, *supra*. But, it's here that Plaintiff points out to the Court "that there is an absence of evidence to support" ODFL's efforts to attribute fault to FP so that it can apportion its damages. *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 324) (cleaned up). Put succinctly, Plaintiff contends that ODFL lacks evidence as to negligence's necessary element of causation. [Doc. 96, p. 5]; *see also Wolfe*, 726 S.E.2d at 125.

"As to the issue of causation," the "[Georgia] Supreme Court has explained that causation is an essential element of negligence claims, and to establish proximate cause,

7

[there must be] a legally attributable causal connection between [a tortfeasor's] conduct and the alleged injury." *Tara Bridge Apartments, LP v. Benson*, 879 S.E.2d 531, 535 (Ga. Ct. App. 2022) (citation omitted). Accordingly, ODFL "must" be able to "introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that [FP's] conduct . . . was a cause in fact of the result." *Id.*

Mr. Alexander's testimony very nearly hits on the all-important causation element ODFL needs, but the questioning at his deposition stopped just short. Even though there was no contact with the rear portion of the trailer on Plaintiff's tractor-trailer during the collision, Mr. Alexander, nor anyone for that matter, has put forth testimony or evidence that the bent L5 pushrod and air leak was *why* Plaintiff couldn't stop quick enough to avoid the accident. *See* [Doc. 68, Alexander Depo., p. 109:17–18 (Mr. Alexander noting that "1.3 feet would be the difference to clear the collision[]")]. What's more, Mr. Alexander's expert report clearly states that "[a]ll the brakes functioned and were within working limits." [Doc. 68, p. 196]. In fact, Mr. Alexander's list of conclusions in his expert report don't mention the brakes in any way. [*Id.* at p. 207].

Is it possible that the pushrod was already bent and that for weeks leading up to the wreck it went unchecked by FP or Plaintiff? *See* [Doc. 94, p. 2 (noting that "Plaintiff has no evidence of the condition of the L5 pushrod and air leak at L5 for two weeks before the accident and [that] Plaintiff cannot identify any evidence that the brake issue

8

did not exist on the day of the accident[]")]. Maybe so. But, a "mere possibility is not enough." *Benson*, 879 S.E.2d at 535. Without specifically connecting the extent of the diminished braking to the bent L5 pushrod and the air leak, there simply isn't a causal connection between the supposed violation of the applicable Federal Motor Carrier Safety Standards and the collision itself.

During oral argument, ODFL asserted that it could extract the missing testimony from Mr. Alexander at trial. However, the Court must take the record as it presently stands, and on this record, there is no evidence on causation with respect to ODFL's apportionment efforts. Not only would this hypothetical trial testimony force Mr. Alexander to impermissibly speculate *when* the L5 pushrod was bent because he's already clearly testified that he has "no idea" whether it was already bent, but, more importantly, there's nothing in the record evidencing *how* the bend caused Plaintiff's tractor-trailer to be unable to brake so as to avoid the colliding with Defendant Poole's. [Doc. 68, Alexander Depo., pp. 37:22—38:2].

Even drawing the justifiable inference in ODFL's favor, *Anderson*, 477 U.S. at 255, that the L5 pushrod was bent and that the air leak was present *before* the collision, the current record has no evidence that those defects affected the overall braking capacity of the tractor-trailer.[1] [Doc. 68, p. 196]. In other words, there is no evidence that the

---

[1] More specifically, there is no evidence that the bent pushrod that created some inefficiency even qualifies as "deficient" equipment under the Federal Motor Carrier Safety Regulations. Just because a brake chamber has some braking inefficiency (which is nowhere quantified in the record) doesn't mean

diminished braking capacity on Plaintiff's tractor-trailer was compromised for causation purposes. Since ODFL cannot sufficiently show that "[t]he brakes on the commercial motor vehicle that [Plaintiff] was driving at the time of the accident were not in compliance with the Federal Motor Carrier Safety Regulations[,]" it cannot show that the bent L5 pushrod and air leak caused the collision. [Doc. 32, ¶ 3]. Consequently, ODFL has failed to "introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of [FP] was a cause in fact" Plaintiff's injuries. *Wolfe*, 726 S.E.2d at 125.

The Court, therefore, **GRANTS** Plaintiff's Partial Motion for Summary Judgment [Doc. 35], and ODFL—with respect to FP Enterprises, Inc.—may not attempt to attribute fault and apportion its damages. However, nothing in this Order is to be construed as impacting ODFL's ability to attempt to attribute fault to Plaintiff for exceeding the speed limit in an effort to apportion its damages (subject to any stipulation limiting the percentage of Plaintiff's comparative negligence). *See, e.g.*, [Doc. 32, ¶ 4].

**SO ORDERED**, this 10th day of February, 2023.

S/ Tilman E. Self, III  
**TILMAN E. SELF, III, JUDGE**  
**UNITED STATES DISTRICT COURT**

---

that it so broken that it fails as "properly maintained and in good working order" under the Federal Motor Carrier Safety Regulations. [Doc. 32, ¶¶ 2–3]; [Doc. 54, p. 4]. Again, Mr. Alexander's report clearly and unequivocally found the brakes to be in good working condition. [Doc. 68, p. 196].